UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **BRUNELL ST. PIERRE,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | Civil No. 4:25-cv-12014-MRG |
| **AIDVANTAGE OFFICE CUSTOMER ADVOCATE** | ) | |
| **Defendant.** | ) | |

**ORDER RE: MOTIONS TO REMAND [ECF NOS. 12, 34] & MOTION TO DISMISS [ECF NO. 41]**

**GUZMAN, J.**

Plaintiff Brunell St. Pierre brings this action *pro se* against Defendant Maximus Education, LLC d/b/a Aidvantage[1] ("Aidvantage"), alleging various violations under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. [Compl. at 6, ECF 1-1 ]. For the reasons stated below, the Court **DENIES** Plaintiff's Motions to Remand [ECF Nos. 12, 34] and **GRANTS** Defendant's motions to dismiss, [ECF No. 41], without prejudice.

I.      **BACKGROUND**

A.  **Relevant Facts**

Plaintiff is a student loan borrower. [Compl. at 6]. Defendant is a furnisher of information to credit bureaus. [ECF No. 42 at 4; ECF No. 66 at 3 ("Plaintiff alleges that Defendant furnished student loan tradelines that had previously been removed or resolved")]. In 2013, Plaintiff's federal student loans went into delinquency. [Compl. at 6]. Plaintiff asserts his student loans were removed from

---

[1] Defendant was incorrectly identified as "Aidvantage Office of the Customer Advocate" or "Aidvantage Office Customer Advocate" in state and federal filings. [ECF No. 1].

Plaintiff's credit reports in 2020 and that Defendant "reinserted" the student loans and their delinquent status into Plaintiff's credit reports in 2024 or 2025.[2] [Id.; ECF No. 13-1 at 1].

Plaintiff initiated this case in Small Claims Court on June 6, 2025, alleging that Defendant (1) reinserted the student loan tradelines without notice or authorization, in violation of 15 U.S.C. § 1681i(a)(5)(B), (2) failed to respond to "certified disputes," in violation of 15 U.S.C. § 1681i(a)(1), and (3) furnished inaccurate, "re-aged" data in violation of 15 U.S.C. § 1681s-2(a)(5). [Compl. at 6]. Plaintiff alleges that these violations harmed his creditworthiness and ability to access financing and requested relief of statutory damages for four separate violations, removal of the tradeline, and reimbursement of his filing fee. [Id.]

After initiating the small claims suit, Plaintiff alleges he sent a "demand letter" to Defendant and that Defendant provided an insufficient response regarding the demand letter. [ECF No. 26 at 27, 31, 37, 51, 55]. On June 26, 2025, Plaintiff submitted additional documents in small claims court in which he added new allegations that Defendant (1) failed to provide written results of a reinvestigation in violation of 15 U.S.C. § 1681i(a)(6); (2) failed to describe procedure Defendant used to determine accuracy of reported information in violation of 15 U.S.C. § 1681i(a)(7); (3) failed to mail written notice of reinvestigation results in violation 15 U.S.C. § 1681i(a)(6)(B)(ii); and, (4) failed to investigate and correct inaccurate reporting upon notice in violation of 15 U.S.C. § 1681s-2(b). [Id. at 25-29].

### B. Procedural History

Defendant removed the case to federal court on July 17, 2025. [ECF No. 1; ECF No. 13-1 at 1]. Plaintiff filed two motions to remand on grounds of improper removal and lack of federal jurisdiction, [ECF Nos. 12, 34], both of which were opposed by Defendant. [ECF Nos. 25, 61].

---

[2] Plaintiff alleges in the Complaint that Defendant improperly reinserted tradelines in 2025; however, in ECF No. 13-1, Plaintiff alleges the tradelines were reinserted in May 2024. [Compl. at 6; ECF No. 13-1].

Defendant filed a motion to dismiss for failure to state a claim, [ECF Nos. 41–42], which Plaintiff opposed. [ECF Nos. 45, 55, 59, 66]. The Court issued a show cause order regarding Plaintiff's first motion to remand, informing Plaintiff that the Court was not inclined to remand since the Complaint only alleges federal claims and does not allege any state law claims. [ECF No. 63]. Using plain language due to Plaintiff's *pro se* status, the Court explained that Plaintiff could dismiss this action and re-file in state court with allegations of state law violations, and that if Plaintiff wished to do so, Plaintiff must voluntarily dismiss the action with prejudice by January 29, 2026. [Id.] In response to the Court's order, Plaintiff acknowledged the Court has jurisdiction over the claims and explained that the Plaintiff would not be voluntarily dismissing his federal Complaint. [ECF No. 65].

The bulk of this case's procedural history in both federal and state courts can be found in the multiple filings Plaintiff submitted in opposition to removal to federal court. [See ECF Nos. 45, 55, 59, 66].

## II.    LEGAL STANDARDS

Defendant filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). [ECF No. 41]. Dismissal under Rule 12(b)(6) is appropriate "if, after accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of a plaintiff, the court determines that [the complaint] 'fails to state a claim upon which relief can be granted.'" Doe v. Williston Northampton Sch., 766 F. Supp. 2d 310, 311 (D. Mass. 2011) (citation omitted); Fed. R. Civ. P. 12(b)(6). A complaint must contain sufficient factual allegations to state a claim to relief that is "both actionable as a matter of law and 'plausible on its face.'" Doe, 766 F. Supp. 2d at 311–12 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, a complaint must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (citation omitted). Further, except in a few

3

limited circumstances, "an adequate complaint must include not only a plausible claim but also a plausible defendant," meaning there must be sufficient factual allegations to establish that a named defendant is plausibly liable for the unlawful acts alleged in the complaint. Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 594 (1st Cir. 2011).

Here, the Court construes the complaint liberally because it was filed *pro se*. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Estelle v. Gamble, 429 U.S. 97, 106 (1976) (determining that a pro se litigant's filings are to be "liberally construed,"). Therefore, a *pro se* complaint, "however inartfully pleaded," must be held to a "less stringent standard than formal pleadings drafted by lawyers." Estelle, 429 U.S. at 106 (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). However, even for *pro se* litigants, dismissing a case is appropriate "when the complaint fails to even suggest an actionable claim." Overton v. Torruella, 183 F. Supp. 2d 295, 303 (D. Mass. 2001) (citing Lefebvre v. Comm'r Internal Rev., 830 F.2d 417, 419 (1st Cir. 1987)).

III.    **DISCUSSION**

A.    **Elements of an FCRA Furnisher Claim**

The Court first endeavors to untangle Plaintiff's FCRA claims, which invoke various parts of the FCRA statutory scheme, some of which are irrelevant. The FCRA "seeks to promote 'fair and accurate credit reporting' and to protect consumer privacy." TransUnion LLC v. Ramirez, 594 U.S. 413, 418 (2021) (quoting 15 U.S.C. § 1681(a)).  There are three main entities that interact under the FCRA: 1) consumer reporting agencies ("CRAs"), 2) the furnishers of information to consumer reporting agencies, and 3) users of consumer reports. See 15 U.S.C. § 1681 *et seq.*  The term "CRAs" includes "credit bureaus, investigative reporting companies, and other organizations whose business is the gathering and reporting of information about consumers for use by others in deciding whether to grant credit, underwrite insurance, or employ the subject of such reports." Martell v. Am. Express Co., 598 F. Supp. 2d 177, 183 n.5 (D.P.R. 2008) (quoting 15A Am. Jur. 2D Collection and Credit

4

Agencies § 38 (2008)). Examples of CRAs include Equifax, Experian, MCCA, and Trans Union.  A "furnisher of information" is not defined in the FCRA, however, "case law defines it as an entity which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies . . . ."  Martell, 598 F. Supp. 2d at 183 n.6 (internal quotation marks and citations omitted).  "Users" of consumer reports, such as "lenders, credit card companies, insurers, and employers," obtain consumer reports from the CRAs and use that information to make credit, insurance, and employment decisions regarding the consumer. Kidd v. Thomson Reuters Corp., 925 F.3d 99, 101 (2d Cir. 2019) (citation omitted).

In the Complaint and several other filings, Plaintiff first alleges that Defendant violated provisions of the FCRA that regulate CRAs.  [Compl. at 6, ECF No. 26 at 27–29 (citing to FCRA § 611(a) *codified as* 15 U.S.C. § 1681i; FCRA § 605(a) *codified as* 15 U.S.C. § 1681c-1)]. These cited portions of the FCRA apply to *CRAs* but are inapplicable to *furnishers*, like the Defendant. See 15 U.S.C. § 1681c (describing a CRA's responsibility related to information a CRA publishes in a consumer reports); 15 U.S.C. § 1681i (detailing a CRA's required procedures in investigating disputed information in a credit report).

Loan servicers like Aidvantage, as well as banks and credit card issuers, are *furnishers* of information to CRAs; they report information to CRAs about any lines of credit the furnishers provide the consumer. See Chiang v. Verizon New England Inc., 595 F.3d 26, 35 n.7 (1st Cir. 2010) (quoting H.R. Rep. 108-263, at 24 (2003)) ("Any person with relevant data about a consumer's financial activity may voluntarily provide it to a CRA, but '[t]he most common . . . furnishers of information are credit card issuers, auto dealers, department and grocery stores, lenders, utilities, insurers, collection agencies, and government agencies.'"). Furnishers' duties are governed by governed by 15 U.S.C. § 1681s-2.

To the extent Plaintiff asserts claims under either 15 U.S.C. §§ 1681c or 1681i, these claims fail because those portions of the FCRA are not applicable to the Defendant, who is a furnisher, not a CRA. See, e.g., Anthony v. GE Capital Retail Bank, 321 F. Supp. 3d 469, 478 (S.D.N.Y. 2017) (finding that, unless there is a showing that a credit card issuer operated as a consumer reporting agency governed by § 1681i, a cause of action against a furnisher under § 1681i is improper); Langan v. United Servs. Auto. Assoc., 69 F. Supp. 3d 965, 977 (N.D. Cal. 2014) (finding that § 1681i "by its express terms, limits the duty to conduct a reasonable investigation to consumer reporting agencies.").

Elsewhere in his filings, Plaintiff attempts to assert a claim under 15 U.S.C. § 1681s-2. [Compl. at 6 (citing FCRA § 623(a) *codified as* 15 U.S.C. 1681s-2(a)); ECF No. 66 at 3–4[3] (citing 15 U.S.C. § 1681s-2(b)); ECF No. 26 at 27 (citing 15 U.S.C. § 1681s-2)]. Furnishers' duties are governed by § 1681s-2(a) and § 1681s-2(b), but only § 1681s-2(b) provides for a private right of action for consumer lawsuits against furnishers.[4] Consumers have a private right of action to sue the furnisher for failure to investigate pursuant to 15 U.S.C. § 1681s-2(b) if a CRA notifies a furnisher of disputed information and the furnisher fails to investigate the disputed information. See 15 U.S.C. § 1681s-2(b); Chiang, 595 F.3d at 35 n.8. While consumers are allowed to notify furnishers directly of disputed information under 15 U.S.C. § 1681s-2(a)(8); there is no private right of action for consumer plaintiffs to sue furnishers for failure to investigate disputed information unless the consumer first notifies a CRA, who then notifies the furnisher of the disputed information. See 15 U.S.C. § 1681s-2(c)(1); Chiang, 595 F.3d at 35 n.8 ("[a] notice of disputed information provided directly by the consumer to

---

[3] The Court can also consider the factual allegations in a *pro se* plaintiff's opposition to a motion to dismiss. See Stevenson v. Amazon.com, Inc., 15-cv-13505, 2016 WL 2851316, at *1 (D. Mass. May 13, 2016).

[4] To the extent that Plaintiff "has purported to state a claim challenging the provision of inaccurate information under 15 U.S.C. § 1681–2(a), that claim must be dismissed as there is no private right of action." Gibbs v. SLM Corp., 336 F. Supp. 2d 1, 12 (D. Mass. 2004), aff'd, No. 05-1057, 2005 WL 5493113 (1st Cir. 2005).

a furnisher does not trigger a furnisher's duties under 15 U.S.C. § 1681s-2(b)") (citing Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1154 (9th Cir. 2009) ("[a] notice of disputed information provided directly by the consumer to a furnisher does not trigger a furnisher's duties under 15 U.S.C. § 1681s-2(b)")); Catanzaro v. Experian Info. Sols., Inc., 671 F. Supp. 2d 256, 259 (D. Mass. 2009) ("notification by a consumer reporting agency to the information furnisher is a prerequisite for liability under 15 U.S.C. §1681s-2(b)(1)") (citing Islam v. Option One Mortgage Corp., 432 F. Supp. 2d 181, 191 (D. Mass. 2006) (finding no private right of action against an information furnisher unless the credit agency informs the furnisher of an inaccuracy in the credit report)); Gibbs v, SLM Corp., 336 F. Supp. 2d 1, 11 (D. Mass. 2004), aff'd, No. 05-1057, 2005 WL 5493113 (1st Cir. 2005) (the FCRA "provides a private cause of action only if the furnisher received notice from a consumer reporting agency, as opposed to the plaintiff alone, that the credit information was disputed").

In opposition to the motion to dismiss, Plaintiff alleges "that after student loan tradelines previously removed from his credit reports reappeared, he disputed those tradelines through one or more consumer reporting agencies." [ECF No. 66 at 2]. This conclusory statement is the only time Plaintiff asserts he contacted a CRA. The allegation does not appear in the Complaint and only arose in response to Defendant's arguments in its motion to dismiss. Nor does the statement specify which CRA Plaintiff contacted or when he may have contacted it. Without more specific information, the allegation does not suffice to meet the plausibility threshold of Rule 8's pleading standards.[5] Additionally, to succeed on his claim, Plaintiff would also have to allege that a CRA notified Aidvantage that his account was in dispute. See Catanzaro, 671 F. Supp. 2d at 259 (dismissing FCRA

---

[5] In evaluating the sufficiency of the complaint, the court only considers "well-pleaded" factual allegations. Iqbal, 556 U.S. at 678–79. Pleadings that "are no more than conclusions[] are not entitled to the presumption of truth." Id. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." S.E.C. v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (citing Twombly, 550 U.S. at 555).

furnisher claim where "nowhere in the factual allegations does the plaintiff state that either [CRA] notified [furnisher] that [plaintiff's] account was in dispute.")

Since Plaintiff has made no plausible showing that he contacted a CRA or that any CRA notified Defendant, Defendant has successfully demonstrated that Plaintiff fails to state an actionable claim under 15 U.S.C. §§ 1681s-2(b). See Catanzaro, 671 F. Supp. 2d at 259–60 ("Because notification by the consumer reporting agencies is an essential element of the plaintiff's FCRA claim, the Court finds that the plaintiff's First Amended Complaints, as written, fail to state a claim under 15 U.S.C. § 1681s–2(b)(1)" (citing Gibbs, 336 F. Supp. 2d at 11)); Gibbs, 336 F. Supp. 2d at 12 ("In the instant case, Gibbs has not alleged that he contacted any credit reporting agency or that the agency, in turn, got in touch with any of the defendants. Under such circumstances, a complaint brought under § 2(b) should be dismissed.")

Accordingly, Plaintiff's only viable FCRA claim under 15 U.S.C 1681s-2(b) shall be **DISMISSED**, but without prejudice and with leave to file an amended complaint that addresses allegations of notice to the CRA and notice from the CRA to Aidvantage. See Catanzaro, 671 F. Supp. 2d at 260 (dismissing without prejudice and giving leave to amend regarding allegation of CRA notice); see Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); Zenith Radio Corp. v. Hazeltine Rsch., 401 U.S. 321, 330 (1971) ("It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court.").

### B.    Standing

Plaintiff's Complaint suffers from an additional defect – his allegation of injury is insufficient to demonstrate Article III standing for an FCRA claim. "[A] plaintiff must have standing to bring each and every claim [they] assert[]." Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012) (citing Pagan v. Calderon, 448 F.3d 16, 26 (1st Cir. 2006). "The Constitution limits the judicial power of the

8

federal courts to actual cases and controversies" and the standing requirement stipulates that "[a] case or controversy exists only when the party soliciting federal court jurisdiction (normally, the plaintiff) demonstrates . . . a personal stake in the outcome of the controversy . . . ." Katz, 672 F.3d at 71 (first citing U.S. Const. art. III, § 2, cl. 1; then quoting Baker v. Carr, 369 U.S. 186, 204 (1962)). "To satisfy the personal stake requirement, a plaintiff must establish each part of a familiar triad: injury, causation, and redressability." Id. (citing Lujan v. Defs of Wildlife, 504 U.S. 555, 560–61 (1992)). The injury in fact must be "'an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.'" Id.

In Spokeo, Inc. v. Robins, 578 U.S. 330 (2016), the Supreme Court analyzed the "injury in fact" prong in the context of an FCRA claim. The Court emphasized that "an injury in fact must be both concrete *and* particularized." Id. at 340. While noting that concrete injuries may be "intangible,"[6] the Court clarified, "a plaintiff [does not] automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Id. at 340–41. In other words, "an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." TransUnion LLC, 594 U.S. at 426–27. Even for a statutory violation, Article III "requires a concrete injury" beyond a "bare procedural violation." Spokeo, 578 U.S. at 341. In the context of the FCRA, the Supreme Court recognized that "[a] violation of one of the FCRA's procedural requirements may result in no harm," such as the mere inclusion of inaccurate information. Id. at 342; TransUnion LLC, 594 U.S. at 425–37 ("plaintiffs cannot demonstrate that the misleading information in the internal credit files itself constitutes a concrete harm" and dismissing claim where plaintiffs did not

---

[6] "Traditional tangible harms [include] physical harms and monetary harms." TransUnion LLC, 594 U.S. at 425.

demonstrate that the inaccurate information in their "credit files were ever provided to third parties or caused a denial of credit.").

Here, Plaintiff's claimed injuries are too conclusory and speculative to be a concrete injury for Article III standing. Plaintiff alleges that Defendant's violations have "harmed [his] creditworthiness and denied [him] access financing," but provides no factual support for these claims. [Compl. at 6]. For example, Plaintiff does not "supply facts that 'name a third-party that has actually received a credit report with the allegedly inaccurate . . . [a]ccount information,' nor does he show that he "suffered an actual credit denial, reputational harm, or any other concrete adverse consequences." See Krausz v. loanDepot.com, LLC, No. 22 CV 152 (VB), 2022 WL 16960928, at *3 (S.D.N.Y. Nov. 16, 2022) (finding no standing based on "conclusory allegation" of injury) (quoting Hossain v. Trans Union, LLC, 2022 WL 14058958, at *3 (E.D.N.Y. Oct. 24, 2022)). The Court reiterates that in evaluating the sufficiency of the Complaint, the Court only considers "well-pleaded" factual allegations.  Iqbal, 556 U.S. at 678–79.  Pleadings that "are no more than conclusions[] are not entitled to the presumption of truth."  Id. at 679.

Plaintiff's conclusory allegations are insufficient to confer standing, however Plaintiff shall be given leave to amend his complaint to provide further factual support demonstrating a concrete and particularized injury. See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); Zenith Radio Corp., 401 U.S. at 330.

### C.    Motion to Remand

Plaintiff moved to remand the case to state court twice, [ECF Nos. 12 & 34]; however, he now acknowledges "the Court's determination that, as presently pled, the Complaint asserts a claim arising under the Fair Credit Reporting Act and therefore provides a basis for federal subject-matter jurisdiction." [ECF No. 65]. Because Plaintiff's only claim arises under federal law, the Court has subject matter jurisdiction pursuant to 28 U.S.C.§ 1331 and the motions to remand are **DENIED.**

IV.    **CONCLUSION**

For the reasons stated above, the Court hereby orders:

1) Plaintiff's Motions to Remand, ECF Nos. 12 & 34, are **DENIED**,

2) Defendant's Motion to Dismiss, ECF No. 41, is **GRANTED without prejudice**.

3) Plaintiff is given leave to file an amended complaint addressing the pleading deficiencies identified in this Order. Plaintiff shall have until **May 1, 2026** to file an amended complaint. Failure to file an amended complaint, and failure to correct the deficiencies of the present complaint may result in dismissal.

**SO ORDERED.**

Dated: March 31, 2026

 /s/ Margaret R. Guzman
Margaret R. Guzman
United Sstates District Judge

11